HENRY MINERT, Appellant,

*vs.*

JOSEPH EMERICK, Appellee.

APPEAL IN EQUITY FROM THE GREEN CIRCUIT COURT.

If the vendor of lands seek to rescind the contract, for non-performance by the ven-
dee, he should be consistent in his intentions, and not mislead the vendee and his
assigns.

Where a vendor, upon default of the vendee, gave notice of recision, but afterwards
brought suit for a part of the purchase money, he was held to a specific performance.

The question of a material alteration in a written assignment of a contract, more
nearly concerns the actual parties to the assignment, than the parties to the
contract.

As between the assignee and the contractor, the material question would seem to be
whether a valid assignment in fact exists, so as to vest the interest in the assignee
and give him a right to enforce the performance of the contract.

On the 2d day of October, 1854, the appellant, Minert,
entered into a contract in writing, with one Goodlander, for the
sale of certain premises in Green county; in and by which he
agreed to convey to said Goodlander, in fee simple, clear of
all incumbrances, the premises sold, on or before the first day
of May then next ensuing. And said Goodlander on his part
agreed to pay said Minert for said land $1,680.00, in manner
following: $250.00 in hand, and the balance on the delivery
of the deed by the vendor. The hand-money, $250.00, was
paid at the time of executing the contract, and endorsed
thereon.

This written contract was afterward assigned by the pur-
chaser, Goodlander, to the complainant below, Joseph Emerick,
and the assignment endorsed on the contract bears date April
30th, 1855; it is contended by the defendant below that the

assignment was made of that date, and the assignment endorsed had been altered by the complainant; but that does not appear to have been deemed material, by the court, as between the vendor and the assignee.

At the same time of the sale to Goodlander, Minert also entered into another contract in writing with one David Welty, for the sale to him of other premises situate in Green county, in and by which he agreed to convey to said Welty the said premises, in fee simple, clear of incumbrances, on or before the first day of May then next ensuing. And said Welty, on his part, agreed to pay said Minert for said land the sum of $2,805.00; in manner following: two hundred and fifty dollars in hand, and the balance on delivery of the deed. The hand-money was also paid upon this contract, and endorsed; and this contract was also afterwards assigned to the complainant below, by a written assignment bearing date the 30th day of April, 1855.

It appeared however in evidence that the hand-money in both cases, instead of being actually paid in cash, was secured by notes; that under the first contract being secured by the signature of Peter Emerick; and that under the latter contract being secured by the signature of Joseph Emerick, the complainant below. These notes were payable on the first day of May, 1855, with interest at the rate of ten per centum per annum.

It appears that the defendant, Minert, upon having effected said sales of his real estate proceeded to close up his affairs for the purpose of removing from the state, and sold off most of his stock and made a prospective trip to Iowa, and looked up a new location, and in view of said sale, put himself in a position so as not to be able to put in crops for the summer of 1855. That in the month of April, 1855, said Goodlander and Welty, who were residents of the State of Pennsylvania, wrote out to Emerick, the complainant, informing him that it would be difficult for them to meet the payments then about to become due, as well as the balance due on the lands or the two notes, on which the Emerick's were security, and requested him to

see Minert before the day of payment and request him to rescind the contracts and cancel the notes, and in case Minert would not consent to that, that he would procure some one to take an assignment of the contracts and perform the same and pay the notes in place of the vendees. This proposition was communicated to Minert, who did not make any decided reply; but he put in crops on the premises, and on the 28th of May, 1855, he mailed to the vendees respectively in Pennsylvania, notices that he annulled the contracts, and was no longer bound thereby, and that he should institute suits for damages for their non-fulfilment. It does not appear that notices were ever received.

In October, 1855, Minert brought suit to recover the amount of the notes against the Emericks, and they, to idemnify themselves, procured the assignment of the contracts to Joseph Emerick, (ante-dated to 30th April, 1855), and on the 10th day of January, 1856, the complainant, Joseph Emerick, having tendered to Minert the sum of $4,185.00, the balance of the purchase money of the two tracts, (the notes having been already paid), gave him notice of the assignment of the contracts to him, and demanded a conveyance of the premises, which Minert refused. During the year following the making of the contract, the value of the premises greatly enhanced; it was admitted these lands, with all the lands in the vicinity, doubled in value after the making the contracts and before the filing the bill.

The cause was heard upon the bill and answer, and the testimony, and a decree rendered by the circuit court, for the specific performance of the contracts by the defendant, Minert, and for costs.

*James H. Knowlton* for appellant.

*J. A. Sleeper*, for appellee.

*By the Court,* COLE J.   We have not been able to discover any error in the decree which was entered in the circuit court in this cause.   The bill was filed to enforce the specific performance of a contract in writing, which is certain and fair in all its parts, and is for an adequate consideration, and can be performed by the parties.   It was objected on the argument by the counsel for the appellant that it would be inequitable and hard to enforce the performance of the contract, because the assignors of the complainant did not strictly perform the same on their own part, by paying the purchase money when it became due, the first day of May, 1855 ; thus subjecting the appellant to great loss in selling off his stock and making arrangements to remove at that time into Iowa or Minnesota ; and which arrangement he was unable to carry out in consequence of the contract not being fulfilled.   Whatever force there might otherwise be in this view of the case, under the circumstances, we do not think the appellant is in a situation to strongly insist upon the objection.   When he was asked in May, by Peter Emerick, to give up the notes and cancel the contracts, he refused to do so.   And some months after, he gave notice through the mail to Goodlander and Welty, that the contracts were annulled and cancelled, he sued and collected the money due on the notes signed by Emericks, which were given for a part of the consideration money for the land sold.   If Minert really intended to abandon the contract, he was bound in good faith to say so distinctly and unqualifiedly to the Emericks, and not attempt to collect of them five hundred dollars, that portion of the consideration money for which they became security to pay, and also try to keep the lands.   These acts are entirely inconsistent with the supposition that he intended to insist upon a punctilious performance of the contract, and had abandoned it on account of the default of Goodlander and Welty in paying the purchase money when it fell due.   Under such circumstances we see nothing unconscientious in enforcing the performance of this contract.   If the contract is to be enforced, the principles upon which the account between the parties is to be stated,

appear to be correct. A point was made by the counsel for the appellant that the written assignments of the contracts were permitted to be read in evidence without any explanation of an alleged alteration in the dates of those assignments; the circuit court holding that it devolved upon the defendant to show by testimony that such alterations were wrong or made so as to invalidate the assignments; and which said ruling as is contended was erroneous. In order that this court might more fully appreciate the force of this objection, it was intimated that the original assignments would be produced for our inspection; but they have not been. However, we do not see how the question, as to whether there had been an alteration of the dates of the assignments, could have been very material under the pleadings of this case. It is to be observed that the action was not one between the assignors and the assignee, where it might be most important for the party claiming under the assignment to relieve the instrument from all suspicion resting upon it, and show that it had not been altered without the consent of the assignors after execution. The bill set out the assignments in full, which bear date April 30th, 1855; but it afterwards charges that the contracts were not really assigned at that time, but were assigned some months thereafter, and dated as of the preceding April, for reasons disclosed in the bill. The evidence is clear and satisfactory that the contracts were assigned some time in October or November, 1855, and that all the rights and interest of Goodlander and Welty under those contracts had, for a valuable consideration, been transferred to, and become vested in, the complainant before the bill was filed. Upon this point there does not appear to be room for doubt, unless we discredit entirely the testimony of Goodlander and Welty, which we see no reason for doing.

It would therefore appear that the right of the complainant to maintain the action, was complete before the suit was commenced. Suits in which bills have been filed for a specific performance of contracts for the sale and conveyance of real estate, have come so frequently before this court, and been so

fully considered, that it is deemed unnecessary to go into any examination of the principles upon which they are sustained. We see no new question presented in the present case, and we therefore think the foregoing observations are sufficient to dispose of all matters material for our consideration.

The decree of the circuit court is affirmed with costs.